## GOULD and others' *vs.* CONWAY.

59  355
57h 588
59b 355
31ap430

In an action for goods sold and delivered, and to recover the balance of an account, day-books and books of original entries, not kept by the plaintiffs themselves, but by book-keepers employed for that purpose, and who did not make the sales charged by them, but only entered the sales reported to them by the salesmen, are not admissible in evidence for the purpose of proving the entries of sales, on proof of handwriting; which sales are not remembered by the persons making the same; and where the sale has not been proven, apart from the book.

Such books, as books of account, are incompetent witnesses for any purpose. Of themselves they can neither prove, nor tend to prove, anything. The entries being all made by third persons, are mere written statements of others—no better than hearsay.

Nor can such entries be properly received in evidence as original memoranda, to aid in establishing the defendant's indebtedness.

Yet it seems, that in such a case, if it appears that the salesman who reported a sale saw the charge made by the book-keeper, and knew, then, that it was correctly made, it may be introduced as a memorandum, in connection with the testimony of the salesman, either with or without the testimony of the book-keeper, the salesman having forgotten the fact that such sale was made by him.

There is no case, or rule of evidence, which holds that the books of account of a party are proper evidence to prove an indebtedness against another, where such books have not been kept by a clerk employed by him. *Per* JOHNSON, J.

APPEAL by the defendant from a judgment entered upon the report of a referee.

. This action was brought by the plaintiffs to recover a balance claimed to be due them upon an account for goods sold and delivered by the plaintiffs, George Gould and James H. Gould, to the defendant, and by them assigned to the plaintiffs. The cause was referred to a referee, to hear, try and determine, who, after trial, reported in favor of the plaintiffs, upon which judgment was rendered against the defendant, and from that judgment the defendant appealed to this court.

The goods were sold to the defendant's family by the plaintiffs, George Gould and James H. Gould, under their firm name of Gould & Son, and were by them charged in.

account to the defendant. Gould & Son had five or six clerks, one of whom acted as book-keeper, and the others as salesmen. When any goods were sold to the defendant or family, the clerk making the sale would report the same to the book-keeper, who would charge the defendant with the goods reported to have been sold, in the account books of Gould & Son. On the trial of the action before the referee, the plaintiffs called the clerks of Gould & Son as witnesses, to prove the sale and delivery of the goods charged in account to the defendant. As to many of the sales, the clerks making the same were unable to remember the transaction, or give any evidence in relation thereto. The plaintiffs then offered in evidence the account books of Gould & Son, claiming that the entries therein made by the book-keeper, of the sale and delivery of the goods to the defendant, were competent evidence. The defendant objected to the reception of the books in evidence, or the entries therein made. The referee overruled the objection, and received the books, and the entries therein made, as evidence. And he reported that there was due to the plaintiffs, from the defendant, the sum of $148.50.

*A. G. Wheeler,* for the appellant.

I. The account books of Gould & Son, and the entries made therein, were not competent evidence. They were the mere declarations in writing of a third party.

II. The entries were not made by the parties who delivered the goods. They are entries of reports from other parties. Thus the written declarations of a third party are received in evidence to prove that the parol declarations of another third party are true.

III. Books of account of this character, and under these circumstances, were never admitted. (*Vosburg* v. *Thayer,* 12 *John.* 461.)

Gould v. Conway.

*Geo. Truesdale*, for the respondents.

The objection to the entries is to their competency, and that direct evidence had been given, tending to prove the sale and delivery of the goods. It appeared that the plaintiffs kept regular books of account, a book-keeper and several salesmen, who occasionally made entries in the absence of the book-keeper, and that entries of the account were made in the usual course of business. In regard to most of the items of the account, the witnesses had no recollection of the transaction, or only a partial and imperfect recollection, which was not refreshed by inspection of the entries. The person who made the entry was sworn to prove the handwriting and correctness of the entry, and the entry was then offered as an original memorandum of a transaction which the witness could not recollect. The entries were, then, the best and only means of proving the sales, and were competent; the book, as such, not being competent. (17 *How.* 399. 3 *Keyes*, 139. *Guy* v. *Mead*, 22 *N. Y.* 462. *Marcly* v. *Shults*, 29 *id.* 346–351. *Halsey* v. *Sinsebaugh*, 15 *id.* 485. *Leland* v. *Cameron*, 31 *id.* 115–121.)

The witness having some indistinct recollection of parts of the occurrence, and the evidence tending to prove the same, does not exclude the memorandum. Failure to remember the delivery or price, or any fact material to make out a sale, makes it competent. To exclude it, it must appear that the witness had, or might have had, a distinct recollection of the sale and delivery. (*Russell* v. *Hudson River R. R. Co.*, 17 *N. Y.* 134–139. 1 *Greenl. Ev.* §§ 115–118.) The rule will admit an entry containing several items, any of which was not remembered by the witness. The offers of the day-books are the same in substance. The evidence was read under the latter only, which includes entries proved, when the witness could not testify to the sale and delivery from recollection. It is mere grouping of the entries after they had all been proved, instead of reading them one by one as proved; and their admissibility de-

pends on the proof, and not on the wording of the offer.
Some entries read by mistake were offered to be with-
drawn. There was no objection that they had not been
proved. The objection to the books is irrelevant to the
offer. The books were not offered as evidence of the
account, but only to show original entries made by the
witness, and to enable him to identify them. Nothing
was read under this offer.

*By the Court*, JOHNSON, J. The only question of any
importance in this case relates to the competency of books
of account, and of entries therein, as evidence to establish
the indebtedness of a party as there charged, against him.
The books offered were day-books, and books of original
entries, and were offered for the purpose, as the case states,
" of proving the entries of sales where the handwriting is
proved, and which are not 'remembered by the persons
making the sale, and where the sale has not been proven,
apart from the book." The evidence was objected to as
incompetent for that purpose. The referee overruled
the objection, and, as the case shows, " received the books
in evidence, and the entries therein made, as evidence
in the case for the plaintiffs." This ruling was excepted
to by the defendant's counsel, and presents the only ques-
tion in the case. The same question, substantially, was
presented, in other forms, in the course of the trial, but
the determination of this exception will be sufficient for
all the others.

Under this decision the plaintiffs' day-books Nos. 1 and
2, were received in evidence in the plaintiffs' favor, and
his counsel read therefrom charges against the defendant,
therein contained, of about forty items, principally of boots
and shoes, charged to have been delivered to the defend-
ant or to some members of his family on his account.
The books had not been kept by the plaintiffs, but by their

Gould *v.* Conway.

book-keepers employed for that purpose. Two or three different book-keepers had been employed during the time the account in question had been running, and the entries read had been made by at least three different book-keepers. According to the course of business in the plaintiffs' establishment, the book-keeper did not make the sales charged by him. The sales were made by other persons employed for that purpose, who reported them as they were made, to the book-keeper, and the latter entered the charges as reported by the salesmen.

Generally the book-keeper knew nothing in regard to the sale having been made, except what the salesman told him; and this was especially the case in regard to the accounts in question. The book-keeper, as a general rule, entered the initials of the salesman who reported the sale, with the charge, so that the salesman might be called upon in case any question should arise in regard to the charge. In regard to six of the entries, made at different times, no initials indicating by whom the sale had been made had been entered, and the book-keepers testified that all they knew about the sales, as charged, having been made, was what was reported to them by the salesmen, but that they made the entries correctly of the sales, as they were reported. Two charges, to which no initials of the salesman had been added, were shown to be in the handwriting of a clerk who was not present or examined as a witness, and whose whereabouts appears to have been unknown to the plaintiffs; and there was no proof whatever on the subject of the sale having been made, except the testimony of one of the plaintiffs, that *he thought* he "delivered the items there charged to one of the boys in the store for delivery," but that he could not tell which of their boys it was to whom he gave the articles for delivery.

The salesmen whose initials were added to the items charged were called as witnesses, and they testified, in regard to the account in question, that they had no recollec-

tion of the particular sale as entered, but that they never reported any sale that was not in fact made by them, or reported one differently from what it was actually made. In regard to the items to which no initials were attached, there was no proof that the sale had been made, other than that of one of the plaintiffs before referred to, in regard to two of them, except what the entries furnished. I have been thus particular in stating the case as it stood when the books were offered and received as evidence, for the purpose of presenting more clearly and distinctly the points on which the questions raised by the exception must turn. The books, as will be seen by the offer, and the ruling receiving them in evidence, were held to be competent and sufficient to complete the evidence and establish the fact that such sales had been made to the defendant, and that he was indebted to the plaintiffs to the extent indicated in the charges, or as tending to prove such indebtedness. Were they competent for that purpose, as the evidence then stood?

As books of account, merely, they were clearly not competent evidence of the truth or correctness of the charges therein contained, for the reason that they had not been kept by the plaintiffs, but by clerks in their employ. There is no case or rule of evidence, which holds that the books of account of a party are proper evidence to prove an indebtedness against another, where such books have not been kept by the party himself, but have been kept by a clerk employed by him.

As books of account, therefore, the books in question were incompetent witnesses for any purpose. Of themselves they could neither prove, nor tend to prove, anything. The entries were all made by third persons, and were mere written statements of others, no better than hearsay. As books of account, therefore, they were improperly received. But although they were offered and received in that form, it is apparent, I think, that the real object and

Gould *v*. Conway.

purpose for which they were offered and received, was as memoranda, merely, of the several entries of items therein contained, in the nature of original memoranda by the parties making them. This, I think, appears from the whole case, and if, under the evidence as the case then stood, the entries were competent evidence, as original memoranda, we should disregard the form of the offer and the ruling, for the purpose of determining the substance embraced in the exception. As memoranda, it is quite immaterial whether they are contained in books of account or on separate slips of paper. In either case it is the statement of a fact in writing, or purports to be so; and the rules of evidence governing its admissibility are well defined.

We are to see, therefore, whether these entries in these books could be properly received in evidence as original memoranda, to aid in establishing the defendant's indebtedness. I think no case can be found which goes the length necessary to support this ruling. I have examined all the cases cited, and many others, in our own State, and in English courts, and have been unable to find one which goes this length. They are all, or nearly all, cases where the witness who made the memorandum knew, at the time he made it, that the matter therein stated was true. In such a case it has been repeatedly held in this State, since the decision in *Merrill* v. *The Ithaca and Owego R. R. Co.*, (16 *Wend*. 586,) where the witness who made the memorandum was unable to recollect the facts contained in it at the trial, but was able to state that he knew the memorandum stated what was true when he made it, that the memorandum so made might be received, in connection with the oral testimony of the witness, as evidence of the facts therein stated. But here the witness making the memorandum had no knowledge of the fact, except what another told him, and the one who told him did not see the memorandum at the time it was made, and conse-

quently cannot state that he knew it was truly made at the time. It comes just to this, that the memorandum is used to prove that what another person told the one who made it was true. This is going a long stride beyond any adjudged case, and would be a most dangerous rule to adopt. It would be little short of hearsay upon hearsay. I am of the opinion that in a case of this kind, if it had appeared that the salesman who reported the sale had seen the charge made by the bookkeeper and knew, then, that it was correctly made, it might be introduced as a memorandum, in connection with the testimony of the salesman, either with or without the testimony of the book-keeper, the salesman having forgotten the fact that such sale had been made by him. I do not find any decision going quite so far, but it seems to me that it falls within the principle of allowing memoranda of facts once known, and committed to writing but forgotten by one of the actors in the transaction, to be used in evidence to supplement his memory, or in the place of it. The question as to who made the memorandum is of much less importance than the question whether the person who saw it made, knew at the time, personally, that the fact existed and was there truly recorded. Of course if the witness did not make the memorandum, in such case, it should be clearly and unmistakeably identified by him as the identical one he saw made, or at least that he saw and understood it when the fact of which he then had personal knowledge was clearly within his recollection. But here the memorandum is quite too far removed from the transaction which it is sought to prove.

I think no one would claim that the book-keeper would be allowed to testify to what the salesman had told him in regard to a sale, where the salesman could only say that if he told the book-keeper so, it was true, but that he had forgotten both the fact, and the narration of it to the book-keeper. That is just what we have here; the

Gould *v.* Conway.

salesman, who alone knew the fact, if it existed, has forgotten both the sale, and the report of it to the book-keeper; all he can say is, that he reported sales truly, and none falsely.

Then comes the book-keeper, who can only say that the entry is in his handwriting, and that he knows he recorded accurately what the salesmen reported. So it all comes back upon the memorandum alone, to prove that the sale was made and the indebtedness incurred as the salesman said it was. This is quite too loose. But the ruling upon the trial goes even farther than this. The books, or the entries therein, were used as evidence of the correctness of charges which had the name of no salesman attached, and in regard to which there was no evidence other than the entry itself. The book-keeper did not pretend to know anything about the fact of the sale, and did not know even by whom it was reported. In regard to one of the items, he stated that it was "probably" reported to him by one of the plaintiffs, and that was all he could state. In regard to two items, which the books or entries were used to establish, there was no evidence, except that they were in the handwriting of a book-keeper who had gone away, and the testimony before referred to, of one of the plaintiffs, that at some time he had given similar articles to one of his boys in the store to deliver to the defendant.

My conclusion upon the whole case is, that the books, as such, were altogether incompetent, and that the evidence was wholly insufficient to authorize the entries in question therein, to be received or read in evidence as memoranda of the transactions to which they related.

The judgment must therefore be reversed, and a new trial granted, with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, February 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]